## MURRAY PEYTON *v.* E. W. CABANISS, Chancellor.

1. CONSTITUTIONAL LAW—PROVISIONAL APPOINTMENT BY GOVERNOR—VACANCIES.—The governor's power of appointment of elective officers under sec. 62, art. XII, of the state constitution was exhausted in such case when once exercised. And if he had the power to fill vacancies occurring by the death of one of his appointees, it must have arisen by act of the legislature. The constitution, by sec. 13, art. V, and sec. 7, art. XII, has authorized the legislature to provide for all vacancies. And this authority was acted upon by the act of May 20, 1870, requiring the governor to fill such vacancies.

2. EXECUTIVE POWER OF REMOVAL.—The executive power of removal is limited to his power of appointment.

3. STATUTES—REPEAL BY IMPLICATION.—If a later and earlier statute conflict, the rule is that the later repeals the earlier, by necessary implication. *Leges posteriores priores abrogant.* 1 Steph. Comm., 76.

4. CASE AT BAR.—Under the act of April 20, 1870, the governor had power to fill vacancies in the office of the chancery clerk, occasioned by death of an incumbent appointed by him. But the 13th section of the chancery act of May 4, 1870., repealed that power and gave it to the chancellor.

Error to the circuit court of Hinds county. BROWN, J.

The opinion of the court contains a sufficient statement of the case.

The following are the errors assigned by plaintiff in error:

1st. It was error to overrule his motion for a peremptory *mandamus*, and to refuse to award such *mandamus*.

2d. It was error to dismisss the petition for a *mandamus*, etc.

*Geo. L. Potter*, for plaintiff in error.

Two questions arise: 1st. Was the power of appointment in the governor, or in the chancellor? 2d. Was the act of appointment, etc., by the governor, a removal of Donnell?

By the constitution, art. 126, it was provided, that "the term of office of all county, township, and precinct officers shall expire within thirty days after this constitution shall have been ratified;" but, nevertheless, the then incumbents were to hold over until their successors should be legally appointed or elected, and duly qualified. In other words, they became subject to removal after the thirty days. The same clause made it the duty of the governor to remove them by appointments. "The governor shall," etc. A special-limited term of office, indefinite in duration, was fixed for such

appointees. They were to hold until their successors should be legally appointed or elected, and duly qualified. The rule was declared that such offices should be elective; but the convention anticipated the probability of an interval of time existing between the ratification of the constitution and the election and qualification of these officers, and made provision for that period, during which the appointing power is vested by the constitution, itself, in the governor. If such power, whether express or implied, exists in him by force of the constitution, it cannot be divested by any act of legislation; or, in other words, the legislative department cannot impair or restrain the constitutional power of the executive. The decedent, Samuell Donnel, was appointed under this clause of the constitution, and the argument is, that, by his appointment, the constitutional power of the governor was exhausted, but this construction does not affect the evident purpose of the convention, first to expel the old incumbents; and second, thereafter, and during the whole period, until the election and qualification of officers, to fill those offices by executive appointment. The terms of the old incumbents were to cease with the thirty days, and what then? The words are: "The governor shall, thereafter, appoint such officers," whose term of office was to continue until the regular officers should be elected and qualified. But suppose the appointee should die the day after his appointment and qualification? In such a case, might not the governor appoint another, in order to effect the evident purpose of the convention to keep the office filled until an elected officer should qualify and take possession? In the case of the supervisors, this court held, that, under this clause of the constitution, the governor possessed the power of removal as incident to the power of appointment, and relied on the case of *ex parte* Hennen, 13 Peters, 259, where it is held that such is the rule, in the absence of all constitutional provision or statutory regulation.

It is obvious that, if the power of removal is an incident to the constitutional grant of power to appoint, then such

power of removal is derived from the constitution, and is, itself, a power vested in the governor by that instrument; and that power cannot be restrained except by some other provision of the constitution. No statutory regulation can affect a constitutional grant of power. The language above cited, from 13 Peters, is to be understood in harmony with this plain rule. If this incidental or implied power arises from a power of appointment given by statute, then it may be affected by some other statutory regulation; but, if the power is derived from the constitution, no statute can impair it.

" And the governor shall, by and with," etc., " thereafter appoint such officers, and the same he may remove at pleasure." The time when he may begin to exercise these powers, is fixed to commence at the end of the thirty days; and thereafter, he may exercise them. But the question arises, for how long are these powers vested in the governor by the constitution? The answer is, until persons shall be elected to fill these offices, and shall qualify according to law. In other words, this clause requires the governor, by appointment of proper persons, to keep each of these offices filled, until a person duly elected, shall be qualified to hold it. The clear intent is, that none of these offices are to remain vacant, and the governor is the person authorized and required to keep them filled by executive appointments, until the person elected is qualified to discharge the duties of the office.

The power to appoint to an office carries with it, by implication, the power to fill a vacancy in such office. The People v. Fitch, 1 Cal., 336. If this be correct, the question is settled; for if, in this case, the constitutional power of appointment was vested in the governor, the legislature could not confer that power on the chancellor.

The two provisions of the constitution authorizing the legislature to prescribe how certain vacancies shall be filled (art. 5, § 13, and art. 12, § 7), do not seem intended for the class of cases under consideration, but refer rather to certain vacancies that may arise when the new government shall be regularly established, and it is certain they do not apply to

these cases, if the view we have suggested of this 6th clause be correct.

2d. The act of April 20, 1870, p. 150, seems to have been enacted as explanatory of this clause of the constitution. It is an act " to provide for filling temporarily " various offices. The powers conferred by this act are limited in time, and are to cease when officers shall be elected and qualified. § 2. It is an act limited to the transition state, and it gives to the governor, both power to appoint and power to remove.

The chancery court act is a general law, which is not necessarily in conflict with the temporary law. It is true that it was declared to be in force "from and after its passage," and thus it went into general operation during the transition state, and at a time when no chancery clerk could be " elected to the office, or could hold for the constitutional " term of four years." Const., art. 6, § 19, p. 45.

But was it intended that this power in the chancellor should be exercised now, and hereafter, or is it to be exercised only after a clerk shall be elected? Where a general law, and a temporary act arise as in this case, presented before the legislature at the same time, and they are enacted nearly at the same time, the presumption is, that they were not intended to conflict, and that they were to apply to different times, or to different cases. This presumption derives force from the marked diversity in the language of the laws relating to the same matter. The general law, the chancery court act, seems to refer to cases arising after clerks have been elected. It assumes that an election law exists, under which there can be " a successor elected and qualified " (§ 13), as if there had been a predecessor " elected and qualified." The temporary clause of the constitution employs very different language. It says, " until the legislature shall provide by law for the election of said officers." Art. 6. The temporary law has the words, " until the legislature shall provide by law for a general election in this state, unless sooner removed by the governor under the provisions of this act." § 2, p. 150. The general provision looks to the permanent state, and the

others to the transition state; and thus construed, they do not conflict. The chancery, or permanent act, contemplates a vacancy in a constitutional term, where a clerk has already been elected, under an existing law, and where, at the end of that term, " can be elected." The temporary provisions look to vacancies in cases where there have been temporary appointments before an election has been had, and before the constitutional term has been filled. In addition to this, it will be observed that the temporary provisions look to cases in which the vacancy may be caused by a removal by the governor, whilst the chancery court act is silent on that subject. If both of these acts were intended to cover the transition state, and thus far, to apply to the same vacancies, it is most singular that the same legislature should, at about the same time, and when there was no election law, adopt such diverse expressions in regard to the same matter. Another singularity is apparent. The act of April 20th expressly confers the power of removal on the governor, and that at his pleasure, during the transition state, and this power is not restrained by the chancery court act. It follows that if the chancellor may now appoint to fill a vacancy, his appointee may be instantly removed by the governor, and thus we have the power of appointment in one officer, and the power of removal in another. The chancellor sets up the pins, and the governor bowls them down. And again, the chancellor may make a temporary appointment, when the regular clerk is " unable " to perform his duties. Suppose such an appointment is made, and therefore the governor removes the regular clerk, what then ?

Again, it has been decided that a removal from office may be express, or it may be " implied by the appointment of another person to the same office." Now suppose, as in this case, the chancellor appoints to fill a vacancy, and then the governor removes the appointee by appointing another person to the same office. In such a case, the chancellor's appointee is removed by the act of putting another person into the office, and the question arises, is such appointee of the

governor in office, or does that putting of him into the office create another vacancy, for the chancellor to fill?

If possible to avoid it, the court will not stultify the legislature, and thus may be avoided by limiting the operation of the 13th section of the chancery court act, regarding vacancies, to the period that is to follow the present transition state of the government.

*W. P. Harris*, for defendant in error.

1st. In all our constitutions, old and new, and in the constitution of the United States, the original power to fill the public offices provided for, and the power to fill vacancies occurring in those offices, are treated as distinct powers, and the appointment to office and the filling of vacancies, provided for as distinct subjects. U. S. Const., art. 1, §§ 2, 3; Const. of Miss. of 1832, art. 3, § 18; ib., art. 4, §§ 5, 20; ib., art. 5, § 13; Const. of Miss. of 1869, art. 4, § 9; ib., art. 5, §§ 13, 17; ib., art. 6, §§ 5, 20; ib., art. 12, §§ 6, 7.

The power of filling offices resides in the people, and is exercised by an election, which requires time and notice; or in one or more of the departments of the government. Where either branch of the legislature participates in the appointing power, the power can only be exercised when that body is in session. Vacancies occur in the intervals of general elections and in the recess of the legislature. The public service requires the offices to be filled during these intervals, hence the necessity of making a distinct provision for filling vacancies.

By an express provision of the present constitution, to be found in article 6, section 13, and in article 12, section 7, the power to provide for the filling of vacancies not provided for in the constitution, is given to the legislature.

The constitution provides for vacancies in the office of governor, members of the legislature, and judges of the supreme court, etc., but clearly makes no provision for filling a vacancy in the office of chancery clerk.

The 6th section of article 12 provides that on the expira-

tion of the terms, by the limitation therein prescribed, of a large class of officers, including not less than nine-tenths of all the offices in the state, the appointment of successors. shall be by the governor, by and with the advice and consent of the senate. These are minor elective offices. There is no provision made for filling vacancies occurring during the official term, which was to begin thirty days after the ratification of the constitution, and to end when the election of their successors should take place. The power is certainly not given to the governor in that section nor in any other; and plainly, a vacancy which in many cases might occur when there was no session of the legislature, was not provided for, and the case falls under the 7th section of the same article, which gives to the legislature power to fill vacancies not provided for by the foregoing provision.

2d. By an act passed on the 20th of April, 1870, Acts 1870, p. 150, the governor is empowered to fill vacancies temporarily in all offices, as to which vacancies no provision is otherwise made in the constitution. And by an act approved May 4th, 1870, Acts, p. 50, a vacancy in the particular office of clerk of the chancery courts is provided for, and it is expressly given to the chancellor. The last act took effect from and after its passage, and as to all its provisoins. It is idle to speculate on the probability that the Act of May the 4th was not intended to apply to vacancies arising during the indefinite time within which no election would be ordered. If there is propriety in giving to the chancellor the appointing power, at some future time, when the elections shall have completed the permanent constitutional organization of the state, the same reason exists now, and the positive provision of the act is not to be evaded by a resort to any conjectural hypothesis as to legislative intention.

The act of the 4th of May, therefore, superseded the act of April 20th, as to this particular office, but left the latter to operate on the other offices comprehended in it. Both acts have their appointed operation. There does not seem to be a doubt on the question. The chancellor, under the act of

May the 4th, proceeded to appoint G. S. Donnell to fill the vacancy occasioned by the death of the incumbent, and he appointed him to hold until a successor should be elected, as the act provides. Donnell was in office when the appointment of Peyton was made. There was no vacancy in the office, and no power in the governor and senate to fill the vacancy if one existed. The legislature, having absolute control over the subject, gave the power to the chancellor.

Where the constitution deals with vacancies, as all its provisions aver every contingency, and as in the case of judges of the supreme court, were providing for the happening of the vacancy when the legislature is in session (§ 5, art. 6), when the constitution is entirely silent on the subject of vacancies, it has always been conceded that the whole matter for any time, and for all contingencies, was left to legislative discretion; so that the legislature may, if it should see fit, give the whole power to the governor or to the judges. This view has been invariably acted on, and has been acted on under the present constitution, as is apparent by the two acts of the legislature before cited. No sound argument, therefore, can be based on the idea that the constitution has merely omitted to provide for vacancies in the recess of the legislature; and that the acts of the legislature must be held to apply only to vacancies occuring during such recess. The constitution leaves no room for this argument. It makes specific provision for filling vacancies in certain cases, and then says in terms very explicit, " as to all other offices in which vacancies may occur," and for which no express provision is here made, or where the constitution is entirely silent, the above subject is left to the legislature. In case of vacancies in the senate and house, the same authority is invoked, which possesses the original primary power. So as to the judges of the supreme court by express words, where that power happens to be in existence. So that we are instructed by the very treatment of the subject by the framers of the constitution, that what is meant by the power to fill a vacancy, is the power to fill it whenever it

happens, and in omitting to provide for this in a given case, is equivalent to an express declaration that the power to fill vacancies in this office is reserved to the legislature. There is not presented here, a case of doubt. We have no right to divide the act of May the 4th into two parts, and say of one part that "this goes into effect to-day," and of another part, "that goes into effect to-morrow." The act itself makes no distinction, and there is no obstacle to the whole going into effect, no confusion or inconvenience produced. To postpone the operation of any one of the powers conferred on the court or chancellor, would be judicial legislation, and not only that, but a judicial legislation repealing a law, or part of a law, admitted to be valid.

PEYTON, C. J.:

This was an application by Murray Peyton, to the judge of the circuit court of Hinds county, for the first district thereof, for a *mandamus* to compel Edwin W. Cabaniss, chancellor of said county, to fix the penalty of his bond as clerk of said chancery court, and to approve the sureties therein.

The petition alleges that on or about the second day of April, A. D., 1871, Samuel Donnell, who was then the lawful clerk of the chancery court of said county, departed this life, and that on the 7th day of April, A. D. 1871, the said office being then vacant by reason of the death of the said Samuel Donnell, the said Cabaniss, as chancellor as aforesaid, appointed George Donnell, of said county, clerk of said chancery court to fill said vacancy, and to perform the duties of said office of clerk of said court, until a successor should be elected and qualified according to law; which said appointment was so made under a supposed authority, vested in said chancellor by the 13th section of the act of the legislature, approved May the 4th, 1870.

The petition further alleges that after the said George Donnell had been so appointed, and had qualified and taken possession of said office, and was in the performance of the

duties thereof, on the 29th day of April, 1871, the governor of this state, appointed the petitioner, the clerk of said chancery court, to fill the vacancy occasioned by the death of the said Samuel Donnell, and the said appointment was duly notified by the governor, to the senate of said state, and on the 6th day of May, 1871, the said appointment was duly confirmed by the senate.

The defendant in his return to the alternative *mandamus*, avers that by virtue of the said act of May 4th, 1870, the said office of clerk being vacant, by the death of the incumbent thereof, he, as chancellor of said county, appointed one George Donnell clerk of said court, to hold his office until his successor should be duly elected and qualified, and that said Donnell gave the bond required by law, and took the proper oath of office, and was duly installed in the office of clerk of the chancery court of said county, and was, at the time of the pretended appointment of the petitioner, performing the duties of the said office under said appointment, and the respondent avers that there was no vacancy in said office at the time of the alleged appointment of the petitioner, nor was there any right or power in the governor and senate, under the laws of the land, to appoint the petitioner to office aforesaid. Whereupon the court refused the peremptory *mandamus* at the costs of the petitioner, who brings the case to this court by writ of error.

The 6th section of the 12th article of the constitution provides that the term of office of all county, township, and precinct officers shall expire within thirty days after the constitution shall have been ratified, and the governor shall, by and with the advice and consent of the senate, thereafter appoint such officers, whose term of office shall continue until the legislature shall provide by law for an election of said officers. When these county offices are filled by the appointment of the governor, in conjunction with the senate, his power in this respect is exhausted under the constitution. And if the governor possesses the power to fill any vacancy that may occur in any of these offices after he has once

VOL II.—52

filled them, and before the election by the qualified electors, it must be conferred by some legislative enactment. And the framers of the constitution foreseeing that such contingences may happen, have wisely provided for them in section 13, article 5, which provides that all vacancies, not provided for in this constitution, shall be filled in such manner as the legislature may prescribe. And in section 7, article 12, which makes similar provision with the section above referred to, that in all cases, not otherwise provided for in this constitution, the legislature may determine the mode of filling all vacancies in all offices.

And in pursuance of these provisions of the constitution, the legislature passed an act April 20, 1870, by which the governor is authorized and empowered to fill, by appointment, all vacancies that may then exist, or that may thereafter occur in the public offices of any city, town, county or district of this state, or in any other public office not embraced expressly in the conveyance of the appointing power by the constitution. And that in all the cases in which he shall have the power under this act, by the terms of the constitution to appoint to office, he shall also have the power of removal from office. The power of removal is limited to the power of appointment, and the governor would have no power to remove the incumbent from any of these county offices unless he had the power to fill the vacancy thus created.

The governor undoubtedly had the right to make the appointment of the clerk of the chancery court of Hinds county, under this act, unless it is repealed by the 13th section of the act of May 4, 1870, which provides that should the office of clerk of the chancery court become vacant, or the clerk thereof become unable or refuse to perform any of the duties required of him, the chancellor may appoint a clerk to perform the duties of said office until said clerk may be able to perform the same, or a successor be elected and qualified. This contemplates two contingencies. Upon the happening of either of which, the chancellor is authorized

to appoint a clerk of his court. In one case, where the incumbent, from sickness or other cause, is unable to perform the duties required of him, the chancellor may appoint a clerk to perform the duties of said office until said clerk may be able to perform the same. In the other case, where the office has become vacant by death, resignation, or otherwise, the chancellor is authorized to appoint a clerk to perform the duties of the office until a successor is elected and qualified.

It will be readily perceived that these statutes, so far as relates to the appointment of the clerk of the chancery court, conflict with each other; and in such case the rule is, that a subsequent statute may repeal a prior one, not only by express provision to that effect, but by necessary implication, and every statute is a repeal by implication of a precedent statute, so far as it is contrary thereto for *leges posteriores priores abrogant.* 1 Steph. Com., 76.

But this is to be understood only when the matter of the latter statute is so clearly repugnant that it necessarily implies a negative. And this, we think, is the case here. If we are correct in the view we have taken in this case, that the latter statute repealed by implication the prior statute, so far as respects the appointment of the clerk of the chancery court, and that the subsequent statute conferred full power and authority on the chancellor to appoint the present incumbent to that office, it follows as a necessary consequence, that the subsequent appointment of the petitioner to the same office by the governor and senate is null and void.

The judgment of the court below is, therefore, affirmed.